**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**BRYAN M. TRUITT**
Bertig & Associates, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 08 2012, 9:59 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOE SONGER, JR., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1101-CR-41 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Mary R. Harper, Judge
Cause No. 64D05-0912-FB-12217

**February 8, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, J.**

Following a jury trial, Joe Songer, Jr. ("Songer") was convicted in Porter Superior Court of two counts of Class C felony burglary and sentenced to fourteen years executed in the Department of Correction. Songer appeals and argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. We affirm.

**Facts and Procedural History**

On November 14, 2009, Songer and his friend Wade Roberts ("Roberts") decided to break into Mike's Premier Grill in Valparaiso, Indiana to steal televisions. After the restaurant had closed for the night, Roberts used a sledgehammer to break in the door, and then he and Songer entered and stole two large flat screen televisions and between $400 and $500 in cash. Thereafter, the two drove to Songer's house, where they unloaded one television and divided up the cash.

Approximately two weeks later, on Thursday, November 26, 2009—Thanksgiving Day—Songer and Roberts decided to burglarize the Road House Bar and Grill, another Valparaiso restaurant. Some time between 10:00 and 11:00 p.m., Songer and Roberts drove to the restaurant. When they arrived, Roberts drove around and acted as a lookout while Songer broke into the building. Once inside, Songer stole a handgun, approximately two-dozen bottles of liquor, a computer, and between $4,000 and $5,000 in cash. Outside the building, Songer cut the cable and telephone lines, as well as the power lines that supplied the restaurant's security system. Songer then returned to the vehicle, where he showed Roberts the handgun and gave him approximately $1,800.

2

As a result of these events, Songer was charged with two counts of Class C felony burglary. A four-day jury trial commenced on October 25, 2010, at which Roberts testified for the State. At the conclusion of the evidence, Songer was found guilty as charged. The trial court sentenced Songer to seven years executed on each conviction to run consecutively, for an aggregate sentence of fourteen years. Songer now appeals.

**Discussion and Decision**

Songer argues that his aggregate fourteen-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. Alvies v. State, 905 N.E.2d 57, 64 (Ind. Ct. App. 2009) (citing Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218). This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Anglemyer, 868 N.E.2d at 491. However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The burden is on the defendant to persuade us that his sentence is inappropriate. Reid v. State, 876 N.E.2d 1114, 1116 (Ind. 2007). Finally,

although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008).

"A person who commits a Class C felony shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." Ind. Code § 35-50-2-6 (2004). In this case, Songer committed two counts of Class C felony burglary and was ordered to serve consecutive sentences of seven years on each count, for an aggregate sentence of fourteen years.

Concerning the nature of the offense, we observe that Songer committed two separate burglaries approximately two weeks apart.[1] Additionally, the record reveals that Songer's acts were premeditated. Songer and Roberts drove from South Haven to Valparaiso for the purpose of breaking into Mike's Premier Grill to steal televisions. Songer even had a buyer lined up for one of the televisions before committing the burglary. Tr. p. 449. With regard to the burglary of the Road House Bar and Grill, Songer and Roberts discussed breaking into the restaurant a day or two prior to the

---

[1] Songer's reliance on Indiana Code section 35-50-1-2 (2004), which prohibits the imposition of consecutive sentences for nonviolent offenses arising from a single episode of criminal conduct, is misplaced. Songer concedes that these burglaries did not arise out of a single episode of criminal conduct, but he relies on the statute "by analogy," arguing that the crimes at issue here were "close to a single episode." Appellant's Br. at 8. We strongly disagree. Songer committed two separate burglaries, two weeks apart, with two separate victims. While Songer committed both offenses in a similar manner, this does not make the crimes analogous to offenses committed as part of a single episode of criminal conduct. See Reeves v. State, 953 N.E.2d 665, 671 (Ind. Ct. App. 2011) (reasoning that whether a series of crimes are related in some way is not the relevant question in determining whether offenses are part of a single episode of criminal conduct; rather, offenses are separate when a full account of each crime can be given without referring to the others), trans. denied.

burglary and, because they were aware that the restaurant had security cameras, they bought ski masks to conceal their identities. Additionally, we reject Songer's argument that the burglaries were committed at a time "when it was clear no person would be present," thereby ensuring that there was "no chance" that Songer would encounter anyone inside the buildings. Appellant's Br. at 7. Although the restaurants were closed at the time of the burglaries, it was by no means certain that no employees would be present.

We are also unpersuaded by Songer's attempts to minimize the harm suffered by the victims. Contrary to Songer's assertion on appeal, the losses sustained by the victims were substantial. Songer stole two large flat screen televisions and between $400 and $500 from Mike's Premier Grill, and he stole between $4,000 and $5,000, a handgun, a computer, and two-dozen bottles of liquor from the Road House Bar and Grill. Songer's assertion that he caused "very little physical damage" to the restaurants is similarly unconvincing. Appellant's Br. at 7. During the first burglary, the building's electrical meters were damaged. During the second burglary, Songer broke a window, ripped part of the alarm system out of the wall, and cut the building's utility lines.

With regard to the character of the offender, we note that Songer, who was twenty-three years old at the time of sentencing, has a lengthy history of contact with the criminal and juvenile justice systems. As an adult, Songer has been convicted of Class B felony robbery, and his probation was revoked in that cause in 2008. Songer committed the instant offenses while on parole, and within weeks of being released from jail. Tr. p. 20. Additionally, the presentence investigation report reveals that at the time of the

5

instant offenses, Songer had charges pending in Lake County for three counts of Class A felony dealing in cocaine and one count of Class D felony dealing marijuana. Songer's history of juvenile delinquency includes adjudications for acts which, if committed by an adult, would have been Class A misdemeanor carrying a handgun without a permit, Class D felony possession of cocaine, Class A misdemeanor possession of marijuana, Class A misdemeanor possession of cocaine, Class B misdemeanor public intoxication, and Class A misdemeanor criminal trespass. We also note that during his incarceration pending trial in this case, Songer received multiple conduct reports for violations of jail rules and other alleged misconduct.

Songer argues that his criminal history "is in some part explainable by his childhood and psychological profile."[2] Appellant's Br. at 7. But the only evidence in the record concerning Songer's mental health is a psychological report from 2004, when he was still a juvenile. Although the report indicates that Songer suffered from dysthymic disorder, depressive disorder, and alcohol and cannabis dependence, the record is unclear as to whether he still suffers from these disorders. To the extent that Songer argues that his criminal behavior stems from a substance abuse problem, we note that Songer has been offered various forms of substance abuse treatment, but he has never completed treatment because he "did not like the class[es]." Appellant's App. p. 35. In light of Songer's failure to follow through with treatment, we cannot say that his chemical dependency lessens his culpability for the instant offenses. Cf. Bryant v. State, 802

---

[2] In imposing its sentence, the trial court considered Songer's ongoing substance abuse problems and troubled childhood as mitigating factors.

N.E.2d 486, 501 (Ind. Ct. App. 2004) (holding that the trial court did not err in finding substance abuse as an aggravating factor where defendant was aware of his problem with drugs and alcohol yet did not take any positive steps to treat his addiction). And while we acknowledge that Songer had a troubled childhood characterized by multiple juvenile adjudications and placements, we do not believe that this history reflects positively on his character or mitigates his culpability for the instant offenses. To the contrary, Songer's juvenile history supports our conclusion that, despite being afforded multiple opportunities for rehabilitation at a young age, Songer has continued to exhibit a pattern of behavior evincing an unwillingness or inability to conform his behavior to the law.[3]

For all of these reasons, we cannot conclude that Songer's fourteen-year executed sentence is inappropriate in light of the nature of the offenses and the character of the offender.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

---

[3] Songer also complains that his sentence is significantly longer than that of Roberts, his accomplice in the burglaries at issue here. We are at a loss as to how Roberts's sentence is relevant to our assessment of the nature of the offenses or Songer's character. Nevertheless, we note that Roberts cooperated with law enforcement, took full responsibility for his actions by pleading guilty, and was sentenced in accordance with a plea agreement. It is therefore unsurprising that Roberts received a more lenient sentence than Songer.